Good morning, Your Honor. Jeff Barr for Petitioner Jose Joaquin Cenotes-Cruz respectfully requests two minutes for rebuttal time. Here we're asking the Court to do two things. We're asking the Court to reverse the BIA's finding of removability because the government failed to meet its burden of proof. If the Court finds that the government met its burden, we ask that the Court reverse the BIA's finding that Mr. Cenotes is ineligible for cancellation of removal. Two overarching themes in this case. First is deportability. Congress has set a high bar for establishing deportability of a lawfully admitted alien. That standard is clear in convincing evidence. Where the government must establish a conviction, Congress requires that the documents be authenticated in a specific way that ensures reliability. As this wasn't done here, Mr. Cenotes is entitled to keep his green card and stay with his family. He admitted it, didn't he? He didn't admit it, Your Honor. He admitted that a crime was committed. But we can't look at that under Tocatli. This Court is — and more importantly, this Court — Portability? This Court is limited to the basis for the finding of the deportability articulated by the Board. And that is, they looked at the documents alone. And that's what the Board says. The documents alone, the records of conviction, sufficed to prove that a conviction for child abuse occurred. Moreover, his admissions established the fact that a conviction occurred. But courts have established that the nature of the conviction must be established by a record of conviction. That is, specific documents to support the conviction. This is because it's not what a person did that makes him deportable, but what section of the law he was convicted of having violated. For example, in Tocatli, the defendant admitted that the assault victim was his wife. That didn't necessarily make it a domestic violence conviction. The government argues — the government appears to concede that the authentication requirements for electronically transmitted conviction documents have not been satisfied. But it argues that the language of 8 U.S.C. 1229A, and then it's, I think, sub 3, sub C, sub — I don't want to say this. I want to make sure I get the government's argument right. If the documents comply with this section, they clearly are admissible. The government argues, but that's not the only way they can be admissible. That is to say, the government argues, and now I'm just reading from the statute. You don't have to look it up. Shall be admissible as evidence to prove a criminal conviction if it is, and then the requirements are set out. The government says, well, you're trying to read the word in. Shall be admissible only if it is. How do you respond to the government's argument? Specifically, in that section of the statute, the heading, for example, is burden of proof. And the requirement is a conjunctive requirement. It's not an either-or requirement. The electronic records, in order to establish some indicia of reliability, have to be certified by both the transmitting person and the — I want to make sure you understand my question, and that is, it's clear that if this section were complied with, these would be admissible. That's correct. What may not be so clear is that this is the only way to make electronic documents admissible if they otherwise bear indicia of reliability. That's the argument. But Congress was very specific here that electronic documents need to be certified by both the transmitting and the receiving party. Respectfully, the government sees this requirement as a suggestion and not a mandate. And that runs contrary to our rules of evidence. Do we have case law that says, that kind of puts the implied only into the statute, say that this is the only way you can get these electronically transmitted documents in? Do we have case law that says one way or the other? Respectfully, I'm not aware of any at this time. Now, as we said, Congress's authentication requirements for conviction documents safeguard the vital interests at stake for legal permanent residents like Mr. Cenotes. Skipping the key steps of authentication by a convicting court undermines the reliability of the process in the documents. So I think we understand your argument about points. Why don't you go ahead and move on to something else because you've got — your time is running out. Let's say we don't buy your argument of certification. What's next? If the court finds that the government did meet its burden of proof, then Mr. Cenotes is eligible for statutory relief. He's eligible for cancellation of removal. The statute requires three prongs, five years of legal permanent residence, no convictions for aggravated felonies, and seven years of continuous residence after lawful admission. We contend that he's met these requirements. He was lawfully admitted in the United States on a temporary basis in 1988. He was lawfully admitted as a permanent resident in 1990. The government denies Mr. Cenotes' eligibility for the seven-year requirement based on the so-called stop-time rule, claiming that his 1993 conviction stops the time of continuous residence. This, unfortunately, has — this application has an impermissive retroactive effect. But we have said it's retroactive, right, that these things are retroactive? I'm sorry, Your Honor. I didn't hear the question. We have held that the stop clock or the stop-time rules are retroactive. That's correct. But those cases only apply to the issuance of charging documents where Congress, via the transitional rules of IRA-IRA and the subsequent legislation, was explicit. In other words, there were time stops on issuances of orders to show cause or notices to appear. Here, guilty pleas are a little different — are a little different character. And that's what Mr. Cenotes did. He pled guilty in 1993. But you've got it as a St. Cyr argument. That's correct. It's the St. Cyr argument, applying a Landgraf retroactivity analysis. The question first is — Can that argument overcome Lara Torres? Well, respectfully, in 2004, which was after St. Cyr, we held those retroactivity — the stop clock, the stop-time provisions to retroactive. And how do you want us to read Lara Torres? Respectfully, I haven't prepared for that particular case, Your Honor. I don't know how to address that question. All right. But I will say that the Fifth Circuit has recently looked at this particular stop-time question in this particular statute, in Gonzales-Garcia v. Gonzales, and simply followed Landgraf and St. Cyr. The Fifth Circuit held that application of the stop-time rule to the pre-Ira-Ira guilty pleas created an impermissible retroactive effect. The Court should likewise apply that Fifth Circuit — Now, in Gonzales-Garcia, that was a guilty plea case. And your client was a guilty plea case as well? Yes, Your Honor. He pled guilty. The argument would be that a guilty plea implicates St. Cyr in the way in which a trial or an administrative notice wouldn't implicate it, because he's actually — by pleading guilty, he's taking an affirmative act on reliance on the — More importantly, and that's correct, in 1993, there were no immigration — there were no consequences to his guilty plea. There was no — there was no potential adjustment to his status. And so we had to take — there was no consideration that his status would change. And so that would have — the change in the law in 1997 would have upset those settled expectations in applying St. Cyr. You've got a minute and 14 seconds. If there are no further questions, I'm going to submit on that. Why don't we hear from the government? Good morning, Your Honor. May it please the Court, my name is Andrew McLaughlin, and I represent the Respondent Attorney General of the United States in this case. You just couldn't stay away, could you? After yesterday, Your Honor, I had to come back for some more. I suspect, judging from the questions from Judge Flesher, that I may have argued too many alternatives in the brief. Let me make it clear. The government does not concede, and the Board found that the conviction documents in this case were properly certified. If you look at page 132 of the record, there is a long fax that contained two conviction records. There is a certification signed by an INS officer saying, I got this thing by fax. And if you look at the bottom of the fax, the fax numbers are numbered consecutively and it includes both conviction records. But it has to be certified on both ends. Correct. If you look at the bottom of each record, there is a handwritten certification by the court officer saying that I sent this to the INS. That's on an earlier page, 127, for example, for the 1993 conviction. So initially, it is not the – it is the position of the government that this was, in fact, properly certified. So give me the certification of the – at the originating end. I believe it's on page 120 – my notes say 127. Okay. And I believe that's a handwritten notation at the bottom of the 1993 conviction that says – it's a CC line that says it was delivered to the Immigration and Naturalization Service and it's signed by the court officer. Okay. And is that true for all of the conviction documents that you need? How many convictions are at stake? There are two convictions, Your Honor. But actually, the only one that really counts here, given that it makes him removable and it bars his relief, is the first one, the 1993 child abuse conviction. That he conceded was, one, a conviction, and two, child abuse, and three, a crime involving moral interpretation. Don't you need two for this to be – There was a second grounds of removability for the child abuse conviction. Pardon me? So he was removable by the child abuse conviction alone. But there are two – there were two grounds of removability. One was the child abuse conviction alone, and the other was the child abuse conviction and the aggravated assault as a cumulative two crimes involving moral interpretation. And why is the first one sufficient on its own? There is a separate grounds of removability for child abuse. I see. And is this first one – I'm now looking at the bottom of page 127. Is that the child abuse that, in your view – That is correct. That's the 1993 conviction for child abuse that took place within five years of his admission as a temporary resident. What's more, it took place within five years of his 1990 admission as a lawful permanent resident. The statute requires that five years starts to accumulate at the time of your admission as a lawful permanent resident. He only had two and a half years in between the commission – between his admission for that. But that's the running of the time. That's the sentence. Right. I just wanted to clarify that because that wasn't clear in the prior argument. But in your view – and I'm going to have to go back and make sure I've got this sorted out properly in my head – if this document is properly certified at both ends, both sending and receiving, that's enough to support the removal order? Absolutely. That completely wipes out his argument as a matter of fact. Now let me point to the matter of law. The statutory section that's been quoted here is immediately followed by another statutory section. Actually, I'm looking at the regulations. If you look at the regulations, the regulations at Section 1003.41, that section that talks about the electronic certification, how it is that a fax needs to be certified, is immediately followed by a section that says, any other evidence that reasonably indicates the existence of a criminal conviction may be admissible. So the interpretation that this prior section is not exclusive, that this – Congress passed this in 1996 when it was trying to cut down on the amount of arguments about convictions. So they said, look, if it meets these criteria, it's absolute, it's going to be admissible. If it doesn't meet these criteria, it may still be admissible if it meets the due process reasonability standard. And that's what you see incorporated in the regulations at 1003.41d. So the position of the government is, first of all, as the Board found, it was properly certified. And secondly, even if it wasn't properly certified, it was sufficient to meet the standards for admissibility. And third, all the immigration judge – the third argument is with regard to cancellation of removal, which is the only thing that was before the court, before the immigration court, because he had conceded removability, the only thing that was before the immigration court was something that he needed to prove. Mr. Sinotius Cruz was required to prove that he did not have a conviction. And yet he conceded in his – in his cancellation application that he was, one, convicted, two, for child abuse, and three, it was a crime involving moral turpitude. Assume for a minute that he's properly removable. How do you respond to the St. Cyr argument? Because it seems to me that his having pled brings this absolutely within the four corners of St. Cyr. If the only question was whether or not he was eligible for relief under 212C, this would work. Yeah. Although he wouldn't meet the time – he wouldn't meet the time limit requirements. As this court held in Laura Torres, and other courts have held, when Congress eliminated suspension of removal as a possible relief and replaced it with cancellation of removal, Congress was entitled to say, when you're coming to us looking for this form of relief, if you've had a conviction any time that meets these criteria any time in the past, you're not going to be eligible for this new form of relief. Which doesn't get you out from under St. Cyr because the reasoning of St. Cyr is that that's an impermissible retroactive application if the person at the time he pleads guilty has no notion whatsoever that it will have this adverse consequence and he has given up his right to go to trial in return for pleading guilty without having any understanding of the adverse consequence that will attach. That's St. Cyr. In that situation, you're talking about substantive eligibility for the original relief. In this situation, you're talking about a form of relief that wasn't even possible at the time. It's a brand-new form of relief and totally different. Well, it's a brand-new form of relief that's more restrictive than what he could have had at that time. It's both more restrictive and more – it's totally new. It's totally new and different. The argument you're making is precisely the argument that the First Circuit rejected in Gonzales-Garcia. Gonzales-Garcia was a case in which the substance of the matter was the availability of 212C relief. It was not – the substance of that argument was not the availability of cancellation of removal. It's a totally different case. This is a case where he's arguing that he ought to be eligible, that the stop-time rule shouldn't apply, and the St. Cyr argument is whether or not he was eligible for substantive relief. So the distinction is whether the stop-time rule applies in a totally different context or whether this – let me make a time limit. The question in St. Cyr was whether or not he should be eligible for the substantive form of relief. The question in Gonzales-Garcia was whether the stop-time rule ought to apply to bar him from being eligible for that same substantive relief. The question in this case is whether the stop-time rule, which was in fact enacted to apply to cancellation, should apply to cancellation or whether the rules regarding St. Cyr and 212C should somehow wipe out the stop-time rule with respect to cancellation. And the answer is no. The answer was no, but I didn't understand the question as you formulated it. I'm still stuck on thinking that St. Cyr controls and that this is an impermissible retroactive application to a consequence to a guilty plea. If this alien were requesting to receive the substantive form of relief, waiver of inadmissibility under 212C, and we were attempting to apply the stop-time rule to the relief… But the broader reasoning in St. Cyr, at least as I read it, is that if someone pleads guilty, thereby giving up his right to go to trial, it's an impermissible retroactive application of adverse consequences later if Congress later decides that I'm going to do something bad to you that you had no notion was going to happen at the time you pled. That applies to the substantive form of relief. It does not apply to the stop-time rule. Every court… And why is that a relevant difference? As this court said in Laura Torres, when Congress established cancellation of removal for the first time, it was a new form of relief. It was not the old form of relief that he might have been eligible for, and in doing that, Congress is entitled to establish new limitations on a new form of relief. Laura Torres helps you a lot because it is a post-St. Cyr case, a 2004 case, and whereas St. Cyr was 2001. The problem with Laura Torres is it's not a guilty plea case. So, whereas we make a very broad statement in Laura Torres, it's not a case involving the core St. Cyr question. So, in a sense, the court didn't really have an opportunity or occasion to consider the application of St. Cyr. I'm not aware of any court that's tried to create this crossover between the application of the… I believe it's happened before. I believe it's happened before, but I can't tell you off the top of my head. I think I'm very hesitant. So, the essence of the point… Let me just follow along in the two seconds you've got left. Let's say we don't buy your argument, just to move the discussion along, and let's say we look at this and we decide that St. Cyr buys bars, contrary to what you're arguing, that St. Cyr buys application of the stop, retract application of the stop time rule to break the five years' time. What happens at that point? Where are we? Where would we be in the case at that point? Okay, if you wiped out the application of the stop time rule, and as it applies to cancellation of removal, because that's the relief that's on the table. I understand. I understand your argument why it shouldn't. So, assuming you had ten years' continuous presence on the table, this alien still could not receive simultaneous waivers for the cancellation waiver in conjunction with the 212C waiver. Now, the record has never been really developed about whether he's entitled to the 212C waiver, but the immigration judge is assuming that he could be eligible for the 212C waiver, and that's indeed the only argument that's ever been exhausted in this case. You can't get both simultaneously. You cannot get both simultaneously. Congress specifically said in enacting cancellation that if you've had a 212C waiver, you can't get cancellation. At the time, Congress was repealing 212C, so the assumption of Congress was you're never, ever going to be able to get a 212C waiver again, so we don't need to deal with the concept of a simultaneous waiver. Remember that until the court, until St. Cyr, 212C wasn't available anymore to any aliens after Herrera. So, Congress was saying, look, we're wiping out 212C. It'll never happen again, and if you've ever had it before, you can't get cancellation. The board's interpretation of it is that if you get a 212C waiver, you can't get cancellation. What you're saying is he immediately gets 12C. He becomes eligible for 212C, which is no longer available, and that prevents him from getting cancellation. 212C would only apply in this case if he was being removed as an overstay or as an illegal entrant of some other form, and he had a bar against it, a disability based on his first conviction. This guy has two convictions. He requires cancellation to waiver the second, and he requires 212C to waive the first, and he can't get both. It's clear in the statute, and even if it weren't clear in the statute, you have to defer to the board's interpretation under these circumstances. If there are no other questions, that's all I have to offer. Thank you. I'll give you minutes for rebuttal. I think you're out of time. Well, actually, you had a minute and 14 seconds, so it's all yours. Just to clarify a couple of factual issues. First, the certification on page 127 of the record that the government refers to is actually for the 1990. The 1993 offense was an aggravated assault, the child abuse offense, for which the board found him removable with the 1997 conviction, and there are no certifications for that. I see. So on your view, then, of what's certified and not certified, he needs to fall back on his argument that the regulation permits this in anyway. Well, and more importantly, the board itself also says that the documents were properly certified by an immigration official. It does not say that they were properly certified by the transmitting official. With regard to the 212C waiver, Congress, the policy behind the 212C waiver in removing Congress didn't want to have to allow immigrants to have two bites of the apple. In other words, getting a 212C waiver and then coming back after some time has passed and getting a second bite of the apple. Well, that's certainly a plausible way of interpreting the statute, but here we have the agency charged with the administration saying, no, if you get them simultaneously, that violates that rule. And that, to me, that does not sound as an irrational or impermissible reading of the statute. Why isn't the tie there go to the agency? Well, here the plain language only precludes new types of waiver, not old types of waiver. And so just the plain language does not support the government's argument. But you agree with government counsel that he needs one kind of waiver for one conviction. He needs another kind of waiver for another conviction. It's not that he can choose. He can say, look, I'm not going to rely on 212C. I'm only one cancellation. He needs both. He needs both. And Congress says you can't have one if you have the other. And since he needs both and he's in both at the same time, the agency says we read the prohibition against having one, and then the others say you can't also in the same instant get both. Not the only problem. You know, I grant you it's sort of a gap in the statute. But there's also this is also contrary to the board's own case law. Okay. And so the court is not entitled to give the board. What case are you relying on? Specifically Sosa Hernandez. Sosa Hernandez stands for the proposition that if you get you can get two if you're independently eligible for one. And the grant of the first renders you eligible for the second. Okay. With that, I'll submit. Thank you. Case started. We'll stand some minutes.
judges: Kozinski, W. Fletcher, Holland